```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
NONYE IKEGWUOHA,                                                  :
                                                                  :
                                    Plaintiff,                    :
                                                                  :        21-CV-6263 (JMF)
                  -v-                                             :
                                                                  :        OPINION AND ORDER
                                                                  :
ART VILLAGE GALLERY a/k/a UREVBU                                  :
CONTEMPORARY, et al.,                                             :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  Plaintiff Nonye Ikegwuoha, an artist, consigned several works of art that he had made to Art Village Gallery ("Art Village") for sale. When some of the artwork did not sell, Ikegwuoha directed Art Village and its owner, Sheila Urevbu (together with Art Village, the "Urevbu Defendants"), to return the artwork to an address in New York using "any of the courier services." Urevbu used FedEx Ground Package System, Inc. ("FedEx Ground") for that purpose, but an office manager at the New York address refused delivery. The artwork has since disappeared. In this action, originally filed by Ikegwuoha in state court, Ikegwuoha seeks damages from FedEx Ground and the Urevbu Defendants for the loss of his art. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment; Ikegwuoha cross-moves for partial summary judgment as to liability. For the reasons that follow, the Court concludes that Ikegwuoha is entitled to judgment against FedEx Ground, but that its damages are capped at $1,000 pursuant to federal law. The Court reserves judgment with respect to Ikegwuoha's claims against the Urevbu Defendants pending discussion with the parties, if not further briefing, on whether the Court should exercise supplemental jurisdiction

over those claims and, if so, whether, under New York law, the Urevbu Defendants had a legal duty to procure sufficient insurance for Ikegwuoha's artwork.

## RELEVANT FACTS

The following facts, taken from the admissible materials submitted in connection with the pending motions, are either undisputed or viewed in the light most favorable to the non-moving party. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Ikegwuoha is a Nigerian-based artist. *See* ECF No. 94-11 ("Ikegwuoha Depo."), at 35-38. In August 2017, Art Village and Urevbu, Art Village's owner, *see* ECF No. 94-12 ("Urevbu Depo."), at 49-52, invited Ikegwuoha to contribute artwork to a commemorative exhibition honoring Martin Luther King, Jr. on the 50th anniversary of King's death. Ikegwuoha Depo. 41, 46-47. The exhibition was held between March and April 2018. *Id.* at 47. Ikegwuoha submitted two sixty-square-inch oil-on-canvas paintings, titled *Freedom* and *Odyssey*, and seventeen to twenty studies — preparatory work usually created as an initial step in creating a final piece — for the Urevbu Defendants' consideration; the Urevbu Defendants selected *Freedom*, *Odyssey*, and three of the studies to show in the exhibition. *Id.* at 57-59, 75.

Ikegwuoha sent the five pieces from Nigeria to Art Village via DHL, declaring their value on the shipping form as $277. *Id.* at 61, 71-72. The works were sent on consignment. *Id.* at 98. The works were not appraised; instead, consistent with their standard operating procedures, the Urevbu Defendants allowed Ikegwuoha "to solely and strictly determine what [he thought his] artwork should be sold for." Urevbu Depo. 66; *see* Ikegwuoha Depo. 104. Ikegwuoha set the price for *Freedom* and *Odyssey* at $25,000 each; he did not set a price on the studies. Ikegwuoha Depo. 98-101. Urevbu told Ikegwuoha that there was interest in some of the pieces, and Ikegwuoha agreed to leave them for a period of time. *Id.* at 105. Ikegwuoha gave

the Urevbu Defendants authority to negotiate on his behalf, and they eventually sold *Freedom* for $12,000; half of the proceeds went to Ikegwuoha and half to Art Village. *Id.* at 107-8.

Ikegwuoha testified that he then "lost all contact" with Art Village. *Id.* at 118. In April 2020, he requested that the four remaining unsold pieces be returned to him. *Id.* After some back and forth (during which Ikegwuoha was represented by counsel), Urevbu agreed to return the artwork. *Id.* at 122-23. Ikegwuoha advised the Urevbu Defendants that he would pay the cost of a courier service and asked that the art be shipped "using any of the courier services" to a "virtual office" address in New York that he provided. *Id.* at 124, 128-30. Ikegwuoha and the Urevbu Defendants did not discuss insurance. *Id.* at 166. Ikegwuoha, however, testified he "would have been willing to go up to — I don't know, a thousand, 2-, $3,000 would be my guess, would be my estimation, [for] insurance." *Id.* at 171.

Art Village used FedEx Ground to ship the artwork. *Id.* at 125; Urevbu Depo. 100. Urevbu testified that she delivered the artwork to a FedEx Ground facility in Memphis, Tennessee; "requested bubble wrap and paper, and . . . confirmed their wrapping procedure for artwork"; and then left before it was wrapped and put together for shipment. *Id.* at 104. On the FedEx Ground forms, Urevbu declared a value of $1,000 for the artwork. ECF No. 71-11, at 96 ("DV" column).[1] Urevbu testified that "the gallery normally does not procure insurance when shipping" but, in this case, "asked for the maximum amount of insurance . . . [o]ut of an abundance of caution." Urevbu Depo. 101. She explained that she "just wanted to take care with getting this returned to" Ikegwuoha. *Id.* at 102.

---

[1]   Citations to page numbers in ECF No. 71-11 are to the page numbers automatically generated by the Court's Electronic Case Filing system.

Independent contractors acting as agents of FedEx Ground attempted to deliver the artwork to the New York address Ikegwuoha had provided, but an office manager at that location rejected the delivery because it was "too large." Ikegwuoha Depo. 130-33, 161; *see* ECF No. 76-9 ("Vasquez Depo."), at 19, 23. The artwork has since disappeared. Ikegwuoha testified that Urevbu "wasn't responding for about a month" and that FedEx Ground "repeatedly informed" him that Art Village was the shipper and needed to act. Ikegwuoha Depo. 172. Urevbu testified that FedEx Ground had informed her that it was going to return the artwork to Art Village but never did so. Urevbu Depo. 112. FedEx Ground's corporate representative testified that the package's last known location was somewhere in Memphis, Tennessee — but could not identify the location with any greater degree of specificity. Vasquez Depo. 31-32.

## PROCEDURAL HISTORY

As noted, Ikegwuoha originally filed this case in state court, alleging negligence on the part of FedEx Ground and the Urevbu Defendants and seeking damages. *See* ECF No. 76-3 ("Am. Compl."); *see also* ECF No. 1-2. Thereafter, FedEx Ground removed the action to this Court on the ground Ikegwuoha's negligence claims against FedEx Ground were preempted by the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706. *See* ECF No. 1 ("Notice of Removal"), ¶ 7. A few months after the case was removed, the Court granted an application from Ikegwuoha's counsel to withdraw, *see* ECF No. 31, and Ikegwuoha represented himself throughout discovery. On August 5, 2022, after FedEx Ground and the Urevbu Defendants moved for summary judgment, new counsel entered a notice of appearance on Ikegwuoha's behalf. *See* ECF No. 85. Through counsel, Ikegwuoha filed his oppositions to Defendants' motions for summary judgment and cross-motions for partial summary judgment.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Finally, it is well established that courts must give "special solicitude" to *pro se* litigants. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [submission] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

DISCUSSION

Ikegwuoha's claims against FedEx Ground and the Urevbu Defendants raise distinct legal and factual issues. Accordingly, the Court will address each set of claims separately, beginning with those against FedEx Ground.

**A. Claims Against FedEx Ground**

As noted, FedEx Ground removed this case to federal court on the ground that Ikegwuoha's state-law claims were completely preempted by the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706(d). *See* Notice of Removal ¶ 7. The Carmack Amendment governs lost or damaged goods transported by motor carriers in interstate commerce. *See* 49 U.S.C. § 14706(d). In enacting the Amendment, "Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability." *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (cleaned up). To provide certainty, the Carmack Amendment "establish[es] a single uniform regime for recovery by shippers directly from the interstate common carrier in whose care their items are damaged, and . . . preempt[s] the shipper's state and common law claims against a carrier for loss or damage to goods during shipment." *Id*. (cleaned up).

Because the Carmack Amendment applies to "'carriers' but not [to] 'brokers,' as those terms are defined by the statute, it is critical to determine whether a defendant was acting as a carrier or as a broker in relation to the particular shipment that was damaged." *AIOI Ins. Co. v. Timely Integrated, Inc.,* No. 08-CV-1479 (TPG), 2009 WL 2474072, at *2 (S.D.N.Y. Aug. 12, 2009). A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). "[T]ransportation" is defined, in turn, as "equipment of any kind related to the movement of passengers or property," and "services related to that

movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* § 13102(23). By contrast, a "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that . . . sells, offers for sale, negotiates for, or holds itself out . . . as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). Significantly, if a party otherwise qualifies as a motor carrier and "accepted responsibility for ensuring delivery of the goods," it is covered by the statute "regardless of who actually transported them." *CGU Int'l Ins., PLC v. Keystone Lines Corp.*, No. 02-CV-3751, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004). "If however [the party] merely agreed to locate and hire a third party to transport the machines, then it was acting as a broker." *Id.*

If the Carmack Amendment applies, a plaintiff establishes a *prima facie* case by demonstrating "good condition, arrival in damaged condition, and the amount of damages." *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964). The burden then shifts to the carrier, which must demonstrate that the damage was caused not by negligence but "by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Id.* at 137 (cleaned up). If liability under the Carmack Amendment is established, "the inquiry then becomes the amount of damages and, usually, whether the carrier legitimately limited its liability for the shipment to a specified value or amount." *AIG Eur. (Neth.), N.V. v. UPS Supply Chain Sols., Inc.*, 765 F. Supp. 2d 472, 482 (S.D.N.Y. 2011) (cleaned up). Importantly, the "Carmack Amendment . . . preserves the common law right of a carrier[] to limit their liability exposure." *Polesuk v. CBR Sys., Inc.*, No. 05-CV-8324 (GBD), 2006 WL 2796789, at *6 (S.D.N.Y. Sept. 29, 2006); *see* 49 U.S.C. § 14706(c)(1)(A) ("[A] carrier . . . may . . . establish rates for the transportation of property . . .

under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation."); *Co-Operative Shippers, Inc. v. Atchison, Topeka and Santa Fe Ry. Co.*, 840 F.2d 447, 451 (7th Cir. 1988) ("Carriers may partially limit their liability on a 'released valuation' basis whereby in exchange for a low transportation rate, the shipper is deemed to release the carrier from liability beyond a stated amount.").

FedEx Ground is plainly correct that Ikegwuoha's claims against it are subject to the Carmack Amendment. FedEx Ground is a well-known motor carrier — and was identified as such by Ikegwuoha himself in the Amended Complaint, *see* Am. Compl. ¶ 5 — and countless courts have held that it qualifies for coverage under the Carmack Amendment for conduct like that alleged here, namely the interstate transportation of goods. *See, e.g., Soto v. FedEx Exp. Corp.*, No. 09-CV-365 (AKH), 2009 WL 2146600, at *1 (S.D.N.Y. July 17, 2009) ("Plaintiff's claims as to the third letter, which he sent by FedEx Ground, are governed by the Carmack Amendment to the Interstate Commerce Act."); *Crypto Crane, LLC v. FedEx Ground Package Sys., Inc.*, No. 18-CV-12420, 2018 WL 6816104, at *3 (E.D. Mich. Nov. 7, 2018) ("Plaintiff's claim still arises from [FedEx Ground's] delivery and, therefore, are preempted by the broad scope of the Carmack Amendment."). Contrary to Ikegwuoha's assertions, *see* ECF No. 93-4 ("Pl.'s FedEx Opp'n"), at 5, that is true even though FedEx Ground enlisted "third parties" to conduct the actual delivery as the record is undisputed that the "third parties" were independent contractors acting as FedEx Ground's agents. *See* Vasquez Depo. 19-23; *see also CGU Int'l Ins., PLC*, 2004 WL 1047982, at *2; 49 C.F.R. § 371.2(a) (providing that an otherwise covered motor carrier does not become a broker if it (or its agent) "arrange[s] or offer[s] to arrange the

9

transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport").[2]

It does not follow, however, that Ikegwuoha's claims "must be dismissed," as FedEx Ground seems to contend. *See* ECF No. 77 ("FedEx Mem."), at 7. FedEx Ground removed this case to federal court on the ground that Ikegwuoha's claims against it, although pleaded under state law, are covered by the Carmack Amendment, and the case has been litigated here with that understanding. Thus, FedEx Ground is estopped from now arguing that Ikegwuoha's claims fail for want of invoking the Carmack Amendment explicitly. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (cleaned up)). Moreover, construing Ikegwuoha's Amended Complaint to raise a claim under the Carmack Amendment, rather than dismissing it for failure to invoke the Amendment explicitly, is consistent with the

---

[2]   Ikegwuoha attempts without success to manufacture a dispute of material fact by asserting in an affidavit that "[t]he FedEx defendants have no knowledge if the third parties that they handed the packages to are licensed shippers or authorized to ship packages within the United States of America." ECF No. 94-2, ¶ 37. The sole admissible evidence in the record on the issue, however, is the testimony of FedEx Ground's corporate representative that the third parties were independent contractors acting as FedEx Ground's agents. *See* Vasquez Depo. 23. Separate and apart from the fact that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014), Ikegwuoha's conclusory assertion is inadmissible because he lacks personal knowledge of the issue, *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.").

"special solicitude" owed to Ikegwuoha, who was *pro se* throughout much of the litigation. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (noting that a court should construe a *pro se* party's pleadings to raise the "strongest" claims "they *suggest*" (internal quotation marks omitted)).

In fact, it is *Ikegwuoha* who is entitled to summary judgment on his claims against FedEx Ground. Indeed, FedEx Ground does not and could not dispute that Ikegwuoha has established a *prima facie* case of liability by demonstrating that the artwork was delivered to FedEx Ground in "good condition" and that it was then lost. *Mo. Pac. R.R. Co.*, 377 U.S. at 137-38. And FedEx Ground proffers no defense to liability under the Carmack Amendment, except to argue its damages should be capped at $1,000 because that was the declared value of the shipment. *See* FedEx Mem. 9-11. On that score, FedEx Ground is on solid ground, as the law is clear that a carrier may limit is liability "to a value established by written or electronic declaration of the shipper . . . if the value would be reasonable under the circumstances surrounding the transportation," 49 U.S.C. § 14706(c)(1)(A), and the record in this case is clear that FedEx Ground did so. Indeed, it is undisputed that Urevbu limited FedEx Ground's liability by declaring the value of the artwork to be $1,000. *See* ECF No. 71-11, at 96; ECF No. 94-2, ¶ 18; Urevbu Depo. 127. FedEx Ground's internal record combined with Urevbu's testimony on that score suffices, as the "statute merely requires that the carrier and shipper agree in writing to a reasonable value, above which the carrier will not be liable. In other words, the statute requires nothing more than a valid written contract between the parties establishing a reasonable value for

11

the purpose of limiting the liability of the carrier." *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271 (11th Cir. 2001) (citation omitted).[3]

Accordingly, the Court grants summary judgment to Ikegwuoha on his claims against FedEx Ground, but holds that he is entitled to only $1,000. There being "no just reason for delay," the Court directs the Clerk of Court to enter judgment in Ikegwuoha's favor against FedEx Ground for that amount pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## B. Claims Against the Urevbu Defendants

The claims against the Urevbu Defendants turn primarily on whether they exercised reasonable care in their handling of Ikegwuoha's artwork and whether they had a duty to insure it. *Compare* ECF No. 81 ("Urevbu Defs.' Mem."), at 8-10, *with* ECF No. 94-4 ("Pl.'s Urevbu Mem."), at 4-6. But before the Court can address those disputes, it must answer a threshold question that the parties do not address: whether, in the absence of pending claims against FedEx Ground under the Carmack Amendment, the Court has — or, more to the point, should exercise — jurisdiction over Ikegwuoha's claims against the Urevbu Defendants. The parties do not cite any basis for original jurisdiction over those claims. Pursuant to 28 U.S.C. § 1367, the Court certainly has discretion to exercise supplemental jurisdiction over the claims, as they "are so related to" the claims against FedEx Ground (over which the Court had federal question jurisdiction) "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But significantly, Subsection (c) of the statute provides that a district court "may decline to exercise supplemental jurisdiction" over such a

---

[3] In any event, Ikegwuoha has forfeited any argument to the contrary by failing to contest FedEx Ground's argument that, if the Carmack Amendment applies, its liability is limited to the $1,000 declared value. *See, e.g., First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392-93 & n.116 (S.D.N.Y. 2002) (holding that an issue a party failed to raise in its memorandum of law was forfeited).

claim if, for example, "the claim raises a novel or complex issue of State law" or if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(1), (3). And "in the usual case in which all federal-law claims are eliminated before trial," as here, the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Indeed, there is at least one strong argument for declining to exercise supplemental jurisdiction over Ikegwuoha's claims against the Urevbu Defendants. Putting aside whether entry of judgment against FedEx Ground constitutes "dismiss[al]" of "all claims over which" the court had "original jurisdiction," 28 U.S.C. § 1367(c)(3), the parties' arguments with respect to the claims against the Urevbu Defendants implicate at least one "novel or complex issue of State law," *id.* § 1367(c)(1), namely whether, under New York law, the Urevbu Defendants had a duty to procure sufficient insurance when they shipped the artwork. The Court has found some New York cases suggesting that the Urevbu Defendants did have such a duty. *See Graubart v. Posner*, 68 N.Y.S.2d 910 (App. Div. 1st Dep't 1947); *Miller v. Harvey*, 221 N.Y. 54 (1917); *Rhind v. Stake*, 59 N.Y.S. 42 (App. Term 1st Dep't 1899). But there are cases pointing in the opposite direction. *See Stearns v. Farrand*, 60 N.Y.S. 501 (App. Term 1st Dep't 1899); *Lehman v. Fischzang*, 274 N.Y.S.2d 971 (Civ. Ct. 1966). Making matters worse, although the parties correctly focus their attention on the question of whether the Urevbu Defendants had a duty, they grapple with none of these cases and barely scratch the surface of what appears to be a complex issue. Indeed, Ikegwuoha cites no relevant cases at all, *see* Pl.'s Urevbu Mem. 6-8, while the Urevbu Defendants rely exclusively on *I.C.C. Metals, Inc. v. Mun. Warehouse Co.*, 50 N.Y.2d 657(1980), which addresses the duties of bailees more generally, *see* Urevbu Defs.' Mem. 13-14.

13

The Court is not likely to exercise (or decline) supplemental jurisdiction over Ikegwuoha's claims against the Urevbu Defendants without briefing on the issue. And if the Court concludes that it is proper to exercise supplemental jurisdiction over the claims, it is likely to want further briefing on the question of whether the Urevbu Defendants had a legal duty to procure sufficient insurance, with attention to the cases cited above. At the same time, the Court is mindful that the costs of litigating these issues — not to mention trying the case in the event that the Court were to conclude that there were triable issues of fact — are likely to exceed any conceivable recovery by Ikegwuoha.[4] For that reason, the Court is firmly of the view that Ikegwuoha and the Urevbu Defendants ought to settle their claims rather than litigate them to final judgment — or, at a minimum, should exhaust all reasonable efforts to do so before incurring greater litigation expenses, let alone going to trial.

The Court will hold a telephone conference with Ikegwuoha and the Urevbu Defendants to discuss these issues on **February 28, 2023**, at **2:30 p.m.** Counsel should confer in advance of the conference, and be prepared to address at the conference, whether and how the Court could facilitate settlement of the remaining claims; the issue of supplemental jurisdiction (including, in the event the Court concludes briefing on that issue is appropriate, a briefing schedule); and further briefing on the question of whether the Urevbu Defendants had a legal duty to procure sufficient insurance. To join the conference, counsel should call the Court's dedicated conference line at (888) 363-4749 and use access code 542-1540, followed by the pound (#) key. (Members of the public and press may also attend using the same dial-in information; they will not be allowed to speak during the conference.) Counsel should review and comply with the

---

[4] Assuming Ikegwuoha can recover anything at all from the Urevbu Defendants, it is hard to imagine a jury awarding him much more than $12,000, the price for which *Freedom* was sold.

rules regarding teleconferences in the Court's Individual Rules and Practices in Civil Cases, including Rule 3(B)(i), which requires the parties, **no later than 24 hours before the conference**, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the teleconference and the telephone numbers from which counsel expect to join the call.

## CONCLUSION

For the foregoing reasons, FedEx Ground's motion for summary judgment is GRANTED in part and DENIED in part, and Ikegwuoha's cross-motion for summary judgment with respect to his claims against FedEx Ground is GRANTED in part. The bottom line is that Ikegwuoha is granted summary judgment on his claims against FedEx Ground in the sum of $1,000. Further, the Clerk of Court is directed, pursuant to Rule 54(b), to enter judgment in Ikegwuoha's behalf against FedEx Ground in accordance with this Opinion and Order. By contrast, the Court reserves judgment on the motions with respect to Ikegwuoha's claims against the Urevbu Defendants pending the discussion with the parties and possible further briefing.

The Clerk of Court is directed to terminate ECF Nos. 74 and 80.

SO ORDERED.

Dated: February 9, 2023
      New York, New York

                                            JESSE M. FURMAN
                                          United States District Judge